The last case on for argument is Chaptelaine v. Town of Eastford. Ms. Chapdelaine, good morning. Good morning, Your Honors. May it please the Court, Darlene Chapdelaine, Plaintiff Pro Se Appellant. Thank you for allowing me notice and opportunity to be heard today. Prior to my argument or my statement, I respectfully request in this court to consider a case that I did not cite or discuss in either of my briefs. It's the case known in this court as Sherman 752F3D554. It is the case of Sherman v. The Town of Chester, docket number 131503. That case was similar and on point with what I've gone through. That case, as with the case of Waltress v. The Town of Preston, that I did cite and discuss in my brief, are probably two of the cases that actually made it to a higher level that are similar in nature. Again, I want to say thank you for this opportunity. All I was asking at the lower court and before the town of Eastford was the opportunity to be heard. I cited cases, I followed the law, I studied our jurisprudence in our state, in this court, and with other courts. Seemingly, the lower courts have had the procedural posture of my case, which I feel is the most important of any case, is how a case starts and how it comes before this panel. Judge Say seemingly agreed in his docket ruling on document line number 61, when he denied Mary Duncan's motion to dismiss, not motion to dismiss, excuse me. Let me correct myself. Her motion to revise and said that my complaint was properly pled and I gave her notice of what my allegations were and gave her an extended amount of time to answer. While I refer this court to the case with Sherman, the court, the Honorable Judge Straub, described a scenario with the plaintiff, Mr. Sherman. He described him as being called Hungry Joe. And this court, after reviewing the documents, should find me to be Hungry Josephine. Known to you all today as Darlene Ann Chaptaline. A woman who purchased property, followed each and every local, state, and federal law to gain all proper permits and exemptions. Yet had my land taken away through a cease and desist order that was never properly noticed or served. I was never given the opportunity to be heard. And under a complaint that was not properly noticed, served, or returned to court timely. Yet I lost my home and was put out on the streets, a home that I purchased on December 9th, 2014, with a bedridden, blind, paralyzed mother, 12 horses, and 13 other farm animals, with three days notice. All of which that I just mentioned were fatal flaws. I never, ever once was afforded the opportunity to be heard. The cease and desist order was placed on the land records in the town of Eastford. I purchased 211 Eastford Road through a bond for deed. I was busy dealing with two ailing parents, so the seller of the property took back, through a bond for deed, a note. I had to refinance that note. Less than 30 days after I received a building permit, an exemption to build my barn, and constructed a $100,000 barn, there was this alleged cease and desist order issued and recorded on the land records. However, I never received it. I never was afforded the opportunity to respond to it. I filed for jurisdictional ruling. I went before the town of Eastford. I followed all the procedural postures. I have exhausted all my local, state, and administrative remedies, which meets the Williamson County Rightness Test, where I did everything to try to get the locals to compensate me and help me, the state to compensate and help me. You don't walk into a courtroom with every federal and state agency supporting you. I'm an environmental consultant. Well, I was before all of this happened. I was approved before the Attorney General in the state of Connecticut as an environmental expert for compliance. All I wanted to do was care for my dying parents and have my horse business and do a little greenhouse nursery for the kids. I never enjoyed one moment of peace or quiet. I could not sit in my living room. They held me hostage to their speech by putting yard signs all around my house that say I support Mary Duncan. My allegations are actually a timeline of events of my life. I couldn't sit in my living room. I couldn't go in my kitchen. I would see these big signs, billboards. They constructed a Internet website. When you talk about the tolling of the Statue of Limitations, Your Honors, that website is still up and running today as I stand before you today. And that website- So, Ms. Chaptolaine, we're obviously listening to your argument, but you're well into your rebuttal time. I'm sorry. My apologies. The red light goes on. That's when you need to wrap up. So we understand that you would like us to vacate the decision of the district court and send it back for further proceedings? Correct, and I do believe my, I'll reserve the rest of my time. My apologies. Ms. Bile. Good morning, Your Honors. May it please the court. On behalf of the defendant appellees, the town of Eastford, and the municipal defendants, we submit that the district court decision dismissing the plaintiff's fifth amended complaint with prejudice was correct and should be affirmed. As this court is aware, there are other appellees whose submissions are being taken on the briefs. And so I will confine my comments, of course, accordingly to the issues addressed to my clients. First, I would respectfully object to the consideration of the case cited today by Ms. Chaptolaine. Quite frankly, once again bringing in a case that existed at the time of prior filings, but not bringing it to the court's attention until the 11th hour is consistent with the history of this case that's been brought forth today. Although we may have already found it on our own. I have no doubts. That being said, I would submit that it's- We're allowed to do that. It's not like a new argument that's being made. We're allowed to go and find it. Understood. It's just simply reflective of the history of this matter. With regard to some of the argument that has been heard both today and in the briefs that have been submitted on behalf of the appellant. There are, again, issues here. You've heard today that the plaintiff appellant is asking for an opportunity to be heard. We would submit that she's been given opportunity upon opportunity upon opportunity. Recognizing that time is limited today, I will rely primarily on the arguments set forth in my brief. However, we would submit that the action taken by the district court was proper and should be affirmed that the underlying complaint, the fifth amended complaint of the second generation of the federal court actions that came after the multiple state actions involving the same allegations are fraught with procedural defects. So let me just ask one quick set of questions. The district court declined to exercise supplemental jurisdiction having dismissed the- That is correct. What purported to be federal claims. Are any of those state actions, have they been re-brought in state court or were they reiterations of state actions that had previously been brought? The latter is correct, your honor. In summary, the primary basis why the district court's action in dismissing the case with prejudice is appropriate and is articulated in painstaking detail, I would submit, by Judge Shea in his memorandum, who again gave great indulgences to the plaintiff, presumably in recognition of her pro se status. There's a number of issues, and this last lawsuit, the ever moving target, which ultimately culminated in the fifth amended complaint, sort of brings together all of those prior actions that were separate in a way that makes it difficult to follow. So again, focusing just on our clients, there's no, as the court correctly stated, there's no personal jurisdiction as a number of those defendants were not served. There was some effort at service made of a dismissed prior complaint, but at that point the complaint had already been dismissed and therefore it was of no moment. Ms. Chaptolaine raises in her brief a claim of diversity jurisdiction, presumably as an alternative basis, although I'm not clear, but I would submit that the record is clear that diversity jurisdiction fails on its face as the majority of defendants, as acknowledged by the plaintiff, are indeed Connecticut residents. In fact, we're dealing with a municipality and municipal defendants. Only three of those defendants that are currently in this particular lawsuit are out of state, which does not satisfy complete diversity. The claims are time barred and that's addressed in detail in the memorandum of decision. And the plaintiff failed, despite repeated opportunities, to comply with the court order and cure the defects that were identified as rule eight defects. Finally, the Inland Wetlands Watercourse Commission is not a legal entity that can be sued separately. And the judge addressed that a number of times, similar to his dismissal of the actions as they related to the judges that had been sued. Held that those claims could not stand. All of these, again, are articulated in the memorandum of decision. That's contained in our appendix, starting at page 161. And unless there are any questions, we would rely on our brief and submit that the district court order granting the motion to dismiss was proper and should be affirmed. Thank you. Excuse me. Thank you, Ms. Bile. Ms. Chaptalain, you've reserved three minutes for rebuttal. Thank you, your honors. I do believe that my complaint, again, meets all the requirements of rule eight. I believe, seemingly, the Honorable Judge Shea agreed. When Ms. Duncan requests to revise my complaint, he said that I adequately, in his ruling, which I have. That's all right, we're aware of the record, as you know. And under the rule, as far as under section 242, the title 18, it makes it a crime for any person acting under the color of law. To willfully deprive a person of a right or privilege protected by it or the laws of the United States. It includes all the officials that work for the town, and this court knows that, including judges, when they act outside the scope of their authority. Being not properly noticed or served, a cease and desist order, there are hundreds of cases. Our jurisprudence is built on notice and opportunity to be heard. And I've cited those cases. I don't need to educate anyone in this courtroom surrounding that. A plaintiff who brings an action under section 1983 for a violation of the rights secured by the 14th amendment must establish that a violation resulted from a state action and thus meets the statutory requirements of under the color of law. Citing Wilger v Edmondson Oil Company 457 US 922-935 at note 18. I've met all the requirements of the rightness tests under Williamson. I have exhausted every single, what it says under the Williamson, you have to for a claim to be right. You know that. And then under section 1981, equal rights under the law. It's right under title 42, 1981B, make and enforce contracts, protection against impairment. I have done, if this court takes an actual look at the procedural posture, I have been treated like a class of one, not only in just Eastford, in the state of Connecticut. Look at the procedural posture. And let me just ask back to the question I asked Ms. Bayou. You have no further actions going on within the Connecticut state? No, Your Honor, and I would like to correct her respectfully. A lot of my issues raised in this court, in this complaint, have not been argued or addressed. And you can read those rulings as well. I've asked for the court to take that as part of the record. I've submitted them. They haven't been addressed. And certainly, this court is very much aware. I can argue in federal court at the same time as state court when there's been a violation of my constitutionally fundamental protected rights. I lost my home. On that note, we surely understand the record of this case. I'm quite confident. And thank you. Thank you very much, Your Honors. Thank you both. Have a great day. Thank you. Thank you. The final case, Wright versus Semple, is on submission. So I will ask the clerk, please, to adjourn court. Court is adjourned.